## JUUL v. UNITED STATES.

### No. 46955.

United States Court of Claims.

May 1, 1950.

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. This is a patent suit alleging infringement of United States patent to Edward A. Juul, No. 1,770,594 issued July 15, 1930. The title of the Juul patent is "Building Construction," and more specifically it relates to construction of concrete walls. A copy of the patent in suit, plaintiff's exhibit 1, and a copy of the Patent Office file wrapper and contents thereof of the application which materialized into the patent in suit, defendant's exhibit 7, are made a part of this finding by reference.

2. The original petition in this case was filed on April 1, 1946, by Edward A. Juul as plaintiff. Edward A. Juul died on December 28, 1946, and thereafter on January 11, 1947, Edward A. Juul, Jr., was duly appointed administrator of the estate of the decedent. On December 10, 1947, an amended petition was filed by the administrator.

### Title

3. On March 23, 1929, articles of organization of the corporation known as "Uni-versal Building Corporation" were accepted and filed in the Department of State of the State of Wisconsin. This corporation was formed by Edward A. Juul, Sr., William E. Jung, and Hubert A. Zetche. The articles of incorporation of the Universal Building Corporation were amended on the 5th day of May 1930 to provide that the capital stock of the corporation should consist of 300 shares.

By an assignment executed June 16, 1931, Edward A. Juul, Sr., assigned the entire right, title and interest in and to his United States letters patent No. 1,770,594, issued July 15, 1930, to the Universal Building Corporation.

4. Following the death of Edward A. Juul, Sr., a search was made by the administrator of his estate for any stock books, minute books or other records of the Universal Building Corporation. None of these documents could be located. On November 3, 1947, and subsequent to the expiration of the patent in suit (July 15, 1947), Edward A. Juul, Jr., Ardelle Imig, nee Juul; Winifred Aleff, nee Juul, and Muriel Gilbertson, nee Juul, the four surviving children of Edward A. Juul, Sr., convened a special meeting of those assumed to be stockholders of the Universal Building Corporation by inheritance or otherwise, and elected officers and passed a resolution. The minutes of this meeting, which have been introduced in evidence as plaintiff's exhibit 7, read in part as follows:

"* * * The chairman then announced that the meeting was called for the purpose, among other things, of electing directors of the company. She informed the stockholders that all former directors of the company had either died or were no longer stockholders of the company. She stated that practically all records of the company, including the stock book and minute book, had become lost so that it was impossible to determine the exact ownership of the stock of the company, and that the only stock certificate still in existence is stock certificate No. 2 issued to William E. Jung on June 11, 1930 for 120 shares of the capital stock of the corporation, which shares of stock, together with any other stock of the

company owned by. William E. Jung, were recently purchased by the four stockholders who were represented at the meeting in equal shares. That from all available information, the only other person who could have owned any stock in the corporation was Edward Arthur Juul who died at the City of Sheboygan, Wisconsin, on December 28, 1946. That Edward Arthur Juul left no will and that by reason thereof his interest, if any, in the stock of the company passed to the four stockholders present at this meeting and Mrs. Emma Juul, they being the only heirs-at-law of Edward Arthur Juul. That Mrs. Emma Juul has executed an assignment of all her right, title and interest in and to any stock of the company to the four stockholders present at the meeting and that Edward A. Juul, Jr. the administrator of the Estate of Edward Arthur Juul, deceased, has relinquished all claim of the estate of said decedent to all stock of the company to the four stockholders present by written assignment, in consideration that the corporation transfer to the Estate of Edward Arthur Juul all its right, title and interest in and to United States Letters Patent No. 1,770,594 for building construction, the title to which is presently registered in the name of the corporation by reason of assignment of patent dated June 16, 1931, executed by the inventor, Edward Arthur Juul, and recorded in the U. S. Patent Office on July 10, 1931, in Volume 149, Page 612.

"She further stated that by reason of the purchase of the stock of William E. Jung and the assignments executed by Mrs. Emma Juul and Edward A. Juul, Jr. administrator of the Estate of Edward Arthur Juul, the four stockholders present were the only stockholders of the Universal Building Corporation. That from all available information it appears that all stock of the corporation, namely, 300 shares, had been issued so that each of the stockholders present at the meeting was the owner of 75 shares of the capital stock of the company.

\*   \*   \*   \*   \*   \*

"Winifred Aleff then introduced and moved for adoption of the following resolution:

" 'Whereas, the Universal Building Corporation is the present recorded owner of United States Letters Patent, No. 1,770,594 for building construction and all the stockholders of the corporation are satisfied and convinced that such patent is not the property of the corporation, but in truth and in fact was owned by Edward Arthur Juul since January 1, 1935, and up to the time of his death on December 28, 1946, and is presently an asset of his estate.

" 'Now, therefore, be it *resolved by the stockholders of the Universal Building Corporation,* That the president and secretary of the company be and they hereby are authorized and directed to execute and deliver to Edward A. Juul, Jr. administrator of the Estate of Edward Arthur Juul, deceased, an assignment of all the right, title and interest of the corporation in and to United States Letters Patent No. 1,770,594 for building construction.' "

5. Pursuant to the above resolution which was adopted, an assignment was executed on November 3, 1947, by the Universal Building Corporation, signed by Ardelle Imig as its president and countersigned by Winifred Aleff as its secretary. This assignment is quoted in part below:

"\*   \*   \* Now, therefore, in consideration of One Dollar to it in hand paid and other good and valuable considerations, the receipt of which is hereby acknowledged, the Universal Building Corporation, a Wisconsin corporation, does hereby sell, assign, transfer and convey unto Edward A. Juul, Jr. the administrator of the Estate of Edward Arthur Juul, deceased, his successors and assigns, the entire right, title and interest of the Universal Building Corporation in and to said United States Letters Patent No. 1,770,594 and the invention set forth therein, throughout the United States, its territories and possessions.

"The Universal Building Corporation, for the same consideration, further hereby sells, assigns, transfers and conveys unto Edward A. Juul, Jr. the administrator of the Estate of Edward Arthur Juul, deceased, his successors and assigns, the entire right, title and interest of the Universal Building Corporation in and to any and all

claims or demands which it has or may have either at law or in equity, arising out of infringement of said Letters Patent. * * * "

This assignment is in evidence as plaintiff's exhibit 5. At the time of execution of this assignment the patent was no longer in existence.

Sometime early in 1935, Edward A. Juul, Sr., exhibited to his son, Edward A. Juul, Jr., a document which he informed him was an assignment of the patent in suit back to him from the Universal Building Corporation. At that time Juul, Jr., was 14 years of age. No such document has been produced nor was such document ever recorded in the Patent Office.

## The Patent In Suit

6. The patent in suit relates to building construction, particularly as to removable and reusable forms for pouring concrete walls and floors. In building a wall in accordance with the teachings of the patent, a series of permanent vertical wall columns having a dimension equal to the ultimate thickness of the wall desired are erected in line with the wall. As shown in the cross-sectional illustration in Fig 3 of the patent drawings, reproduced herewith, these columns may consist of steel H-beams with their webs at right angles to the plane of the wall. These beams are indicated in this figure by the reference numeral 10.

Figures 2, 3, and 4 of patent in suit.

A series of forms are next placed horizontally on edge, one resting above the other, with their flat inner surfaces in contact with the flanges of the wall columns. Fig. 2 reproduced herewith indicates the stacking or positioning of the forms, one of which is shown in detail in Fig. 4, and consists of a heavy sheet metal member reinforced by marginal flanges.

A series of vertical retaining structural members, such as T-bars 21, are arranged in spaced parallel relation to and adjacent the wall columns. These T-bars are removably bolted to the base of the wall column and to its top, and serve to hold the form members tightly against the flanges of the permanent wall columns and thereby form a cavity defined by the wall columns and the forms. A plastic concrete mixture is then poured into this cavity, the patentee suggesting the use of cinder concrete which he states is preferred because of its lightness and heat-insulating qualities. After the concrete has hardened, the retaining bolts for the T-bars are then removed, permitting removal of the T-bars and the forms, which may then be reused for further wall-forming operations. The wall thus formed consists of spaced permanent wall columns and intermediate panels of concrete of the same thickness as the columns.

7. Claim 3 of the Juul patent is here in issue. This claim reads as follows: "3. A form structure for concrete buildings, comprising spaced permanent wall columns, removable forms extending between said wall columns and disposed one above the other in lateral abutment with said wall columns to define with said columns a wall cavity for receiving plastic concrete, and removable upright supports engaging the outer sides of said forms for retaining said forms in engagement with said permanent wall columns, whereby said wall cavity is keep free from form-bracing means."

8. Edward A. Juul, Sr., was an architectural engineer and interested in concrete engineering. In or about February 1925 he became interested in concrete structures of the general nature disclosed in the patent here in suit. He would discuss such structures with a Mr. Walter W. Schuman, at that time employed by him. Such discussions continued over a period of two years, with a disclosure of various sketches to Schuman made on the backs of envelopes, scratch pads, etc. The various sketches would differ from each other in various details, and some sketches were discarded and others changed.

This procedure continued until, at the request and instruction of Juul, Schuman under date of November 3, 1926, made a sketch that is identical with Figs. 2, 3, and 4 of the patent in suit. This sketch was received in the office of plaintiff's patent counsel on November 5, 1926. Following receipt of this drawing Juul's patent counsel prepared the application papers which materialized into the patent in suit, transmitting them on February 14, 1927, to Juul for his approval. This application was filed in the Patent Office on February 18, 1927.

The original drawing made by Schuman is in evidence as plaintiff's exhibit 9. This is the only drawing or sketch that has been produced and the only documentary evidence relative to the Juul date of conception, which is therefore November 3, 1926, the date of this drawing.

### The Alleged Infringing Act

9. The alleged infringing act complained of in the present case was the application of plastic armor to the deckhouses, pilot houses, radio rooms and chart rooms of vessels either previously built or being constructed for the United States Maritime Commission. This work was carried out for the Maritime Commission by contractors within the six-year period prior to the filing of the original petition in this case (April 1, 1946).

The plastic armor consisted of a 3-inch layer of bituminous concrete made of a mixture of asphaltic material with a suitable filler such as crushed stone or gravel. The purpose of this armor was to provide protection to personnel in the various deckhouses of a ship. These structures are normally built of relatively thin steel plate. The 3″ plastic armor acted as an additional protective barrier, preventing the ready penetration of shell fragments and small caliber projectiles, although it would not resist the direct hit of a shell.

10. The application of this plastic armor is illustrated in the two drawings reproduced herewith from plaintiff's exhibit 2, which is a blueprint showing plastic armor details for cargo vessels C3-S-A2. As shown in the top figure entitled "Typical Erection Detail," the first step consisted in the application of a series of vertical steel stiffeners or columns of conventional T-cross-section to the steel wall of the deckhouse. These were welded thereto at distances approximating two feet between the adjacent stiffeners, with the flanges of the T-rails positioned outwardly from the steel wall of the deckhouse. Threaded stud bolts were welded to the flanges of the T-rails, these bolts being spaced vertically apart along the T-rails at distances not exceeding 18 inches.

A removable steel form was then placed on the outside of the T-rails with the stud bolts extending through holes in the forming plate. In the preferred method, the forming plate consisted of a single sheet extending the full height of the deckhouse but in some cases more than one plate was used, this procedure being dependent upon the size and shape of the steel plates available to the various contractors from which to make the steel forms.

Angle braces with suitable holes drilled in them were next placed over the ends of the studs extending through the form or forms, and nuts cushioned by washers were then screwed onto the stud bolts to hold the form or forms tightly against the T-rail stiffeners. This construction is exemplified in plaintiff's physical exhibit 3, which differs from the structure just described only in relative size. This model shows a series of forms rather than a single form plate.

After the form or forms were in position the plastic bituminous mixture, which had previously been heated to 475° F., was then poured into the cavities formed by the steel wall of the deckhouse on the back, the form on the front and the T-rails at the sides. When the material had cooled and hardened, the nuts, washers and angle braces holding the forms against the T-rails were taken off and the forms removed. The stud bolts that projected from the flanges of the T-rails were then burned off and ground flat, leaving a smooth completed outer surface such as is shown in "Section A-A" of the above figures.

11. On July 23, 1942, the Maritime Commission was notified by Edward A. Juul, Sr., in writing of the patent in suit and its alleged infringement.

### The Prior Art

12. During the prosecution of the application which materialized into the patent in suit, the prior art cited by the Patent Office was as follows:

### TYPICAL ERECTION DETAIL
FORMING PLATES IN PLACE
3" = 1'-0"

### SECTION A-A
3" = 1'-0"

The alleged infringing structure.

United States patent to Clawson, No. 311,567, patented February 3, 1885 (defendant's exhibit 8–A);

United States patent to Rau, No. 518,076, patented April 10, 1894 (defendant's exhibit 8–B);

United States patent to Kalweit, No. 797,963, patented August 22, 1905 (defendant's exhibit 8–C);

United States patent to Barg, No. 913,090, patented February 23, 1909 (defendant's exhibit 8–D);

United States patent to Bartow, No. 1,190,977, patented July 11, 1916 (defendant's exhibit 8–E);

United States patent to McKay, No. 1,212,654, patented January 16, 1917 (defendant's exhibit 8–F);

United States patent to Bagby, No. 1,235,542, patented August 7, 1917 (defendant's exhibit 8–G);

United States patent to Fluor, No. 1,368,131, patented February 8, 1921 (defendant's exhibit 8–H);

United States patent to Ross, No. 1,478,917, patented December 25, 1923 (defendant's exhibit 8–I);

United States patent to Seat, No. 1,552,885, patented September 8, 1925 (defendant's exhibit 8–J);

United States patent to Ham, No. 1,598,131, patented August 31, 1926 (defendant's exhibit 8–K).

Copies of the above patents, defendant's exhibits 8–A to 8–K, inclusive, are made a part of this finding by reference.

13. In addition to the prior art listed in the previous finding, the following United States and foreign patents were available to those skilled in the art prior to Juul's date of conception, November 3, 1926:

United States patent to Cummings, No. 1,551,469, patented August 25, 1925 (defendant's exhibit 1);

British patent to Dawson, No. 108,195, accepted July 27, 1917 (defendant's exhibit 2);

United States patent to Judson, No. 592,738, granted October 26, 1897 (defendant's exhibit 4);

British patent to Smith, No. 154,392, accepted December 2, 1920 (defendant's exhibit 6);

United States patent to Smith, No. 1,402,906, granted January 10, 1922 (defendant's exhibit 6–A).

These patents, defendant's exhibits 1, 2, 4, 6, and 6–A, are made a part of this finding by reference.

14. The following patents were issued on applications filed on the dates indicated, which dates are prior to Juul's date of conception, November 3, 1926:

United States patent to Peabody, No. 1,668,599, granted May 8, 1928, issued on an application filed January 18, 1926 (defendant's exhibit 3);

United States patent to Armbruster, No. 1,658,154, granted February 7, 1928, issued on an application filed September 20, 1923 (defendant's exhibit 5).

These patents, defendant's exhibits 3 and 5, are made a part of this finding by reference.

15. United States patent to Cummings (defendant's exhibit 1) relates to building construction and particularly to forms for molding concrete walls or panels between a plurality of permanent wall columns. A plurality of permanent wall columns such as precast concrete ‖-beams, or the like, are spaced apart and secured in an upright position in the line of the wall being built in any suitable manner. Concrete is poured between these spaced columns in forms disposed on opposite sides of the columns, the forms and the columns together defining a wall cavity for receiving plastic concrete.

As shown in Fig. 1 of Cummings, reproduced herewith, the forms proper or "mold boards" are composed of a plurality of boards having holes bored therein at spaced intervals. A plurality of forms is placed horizontally one above the other on opposite

sides of the wall columns and temporarily bolted thereto, through the holes therein. These wall columns determine the thickness of the wall being built.

crete therebetween constituting the complete wall.

16. United States patent to Peabody, issued May 8, 1928 (defendant's exhibit 3)

Figure 1 of Cummings patent.

In building a wall in accordance with the teachings of the Cummings patent, permanent wall columns made of precast concete, steel, brick, or the like, having a dimension equal to the thickness of the wall desired, are erected to stand upright and in the line of the wall. Form boards are placed against the permanent wall columns disposed one above the other and are bolted to draw them tightly to the spaced permanent wall columns so as to define a cavity for receiving concrete consisting of the front and back removable forms and, the sides of the spaced permanent wall columns. After the wall columns and the forms are in place, plastic concrete is poured into the cavity defined by the columns and the forms retained on opposite sides thereof. When

on an application filed January 18, 1926, relates to forms for building concrete walls. As disclosed in the patent, a plurality of vertical columns such as wooden 2 x 4's, or the like, are spaced apart and secured in a vertical position in the line of the proposed wall. Removable forms are then placed on the front and back sides of the columns and are fastened thereto. Plastic concrete is then poured into the cavity defined by the columns and forms. When the concrete hardens, the forms are removed and may be reused.

The front forms are composed of a plurality of members or board units placed horizontally one above the other. As shown in the cross-sectional illustration, Fig. 2

Figure 2 of Peabody patent.

the concrete has attained the proper set, the bolts holding the forms against the upright columns are unscewed and the forms are removed, leaving a wall composed of panels of concrete of the same thickness as said columns alternating with the columns, the columns and the panels of con-

of this patent reproduced herewith, these forms e are retained in proper relationship with the vertical posts or columns b by removable upright supports g engaging the outer side of the forms adjacent the vertical wall columns, these vertical supports being bolted or fastened to the wall columns by

bolts $g^2$. As disclosed in this patent, the front form supports and forms are spaced slightly away from the wall columns so that the fronts of the wall columns are completely covered or concealed by the concrete. If such concealment or embedding of the wall columns is not desired, it would be an obvious expedient to hold the form boards directly against the wall columns by the vertical supporting members.

17. United States patent to Bagby, issued August 7, 1917 (defendant's exhibit 8–G) discloses an apparatus and method of constructing concrete walls in which a series of steel forms are temporarily retained in position by means of vertical T-rail supporting members. Fig. 1 of this patent is reproduced herewith. This disclosure teaches the use of vertical form-supporting members located on the exterior of a series of horizontal forms.

18. United States patent to Smith, issued January 10, 1922 (defendant's exhibit 6–A), relates to a method of constructing concrete walls. In accordance with the teachings of this patent, a plurality of permanent wall columns of pre-formed concrete is erected in spaced relationship to each other in the line of the proposed wall.

As shown in Fig. 1 of this patent reproduced herewith, a plurality of form boards $C^1$ is placed horizontally one above the other on opposite sides of the wall columns. These are retained in place against the columns by means of pairs of vertical form-supporting members or clamps $C$, which are preferably bolted or otherwise connected to the form boards. The cavities thus formed by the permanent wall columns and the forms are free from form-bracing means. After plastic concrete poured into the cavities has attained the proper set, the

Figure 1 of Bagby patent.

vertical upright supports may be loosened and the forms with their vertical supporting members and clamps reused on another portion of the wall.

Figure 1 of Smith patent.

## Infringement and Validity

19. Claim 3 of the Juul patent in suit when interpreted in connection with the disclosure in the specification, relates to a wall cavity defined by permanent wall columns and removable forms, so held in place that the wall cavity is free from form-bracing beams. The claim is not limited to any particular type of concrete and is inclusive of bituminous concrete as well as cementitious concrete.

The claim is not limited with respect to any particular number of forms, nor is it limited to any particular type of building or housing structure. Broadly interpreted, the phraseology of claim 3 of the Juul patent is applicable to the means employed by the defendant in the application of plastic armor to the walls of deckhouses.

20. Claim 3 of the Juul patent is antici-pated by the disclosure of the Smith patent (Finding 18).

For purposes of comparison, this claim is paraphrased, together with the corresponding structure in the Smith patent, as follows:

| Claim 3 | Corresponding elements in Smith |
|---|---|
| A form structure for concrete buildings, comprising— | |
| spaced permanent wall columns. | The permanent wall columns AA. |
| removable forms extending between said wall columns and disposed one above the other in abutment with said wall columns | Removable form boards C¹ disposed one above the other in abutment with the wall columns AA. |
| to define with said columns a wall cavity for receiving plastic concrete, and | In conjunction with the wall columns, the form boards provide a wall cavity for receiving plastic concrete. |
| removable upright supports engaging the outer sides of said forms for retaining said forms in engagement with said permanent wall columns, whereby | The upright supports CC which carry a clamping means at their upper ends and which hold the form boards C¹ in engagement with the wall columns. |
| said wall cavity is kept free from form-bracing means. | As stated in the Smith specification, the wall cavity "is free from any cross connections or interpretations of any kind." |

132

21. The United States patent to Cummings (Finding 15) discloses a plurality of wall columns spaced apart and secured in upright position. Forms are temporarily bolted to these wall columns to define a wall cavity for receiving plastic concrete.

This is the exact structure utilized by the Government in its plastic armor construction, with the exception that the Government reinforced the forms by upright supporting members located against the exterior surface of the forms. The use of such vertical supports is taught by United States patents to Peabody and Bagby (Findings 16 and 17), and to use such vertical supports would be an obvious expedient to those skilled in the art.

The structure utilized by the Government is therefore taught by the prior art, and if claim 3 of the Juul patent is interpreted with a sufficiently broad scope to be applicable to the Government structure, it is anticipated by Cummings in view of the disclosure of either the Peabody or Bagby patent.

22. Claim 3 of the Juul patent here in issue is invalid in view of the prior art, and is not infringed.

23. The parties have stipulated that the proof of the extent of use or the liability, if any, of the United States and the amount of compensation due to plaintiff shall be deferred until questions of validity and infringement of the invention be determined.

Mark P. Friedlander, Washington, D. C., for plaintiff.

T. Hayward Brown, Washington, D. C., H. G. Morison, Asst. Atty. Gen., Gordon C. Biddle, on the brief, for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Chief Judge.

This is a suit for alleged patent infringement by the Maritime Commission and contractors building ships for that agency. A patent was issued to Edward A. Juul on July 15, 1930. It related to construction of concrete walls and floors.

The Universal Building Corporation had been incorporated March 23, 1929. The incorporators were Edward A. Juul, Sr., William Jung and Hubert Zetche.

On June 16, 1931, Edward Juul, Sr., assigned the letters patent to the corporation.

Edward A. Juul, Sr., died on December 28, 1946, and on January 11, 1947, Edward A. Juul, Jr., was appointed administrator of his estate.

The original petition in this suit was filed April 1, 1946, by Edward A. Juul, Sr. After his death his son, as administrator, filed an amended petition on December 10, 1947. The petition alleges that plastic armor used in the construction of pilot houses, radio and chart rooms of vessels built on behalf of the United States infringed claim 3 of the patent in suit.

At the outset defendant pleads that plaintiff has not shown that he is the owner of the patent. The issue arises in this way:

The petition alleges that on January 1, 1935, the corporation reassigned the patent to Edward Juul, Sr., and that thereafter the patent belonged to him and his heirs.

The only direct evidence of a reassignment to Juul, Sr., was the testimony of Juul, Jr., that in early 1935 his father exhibited a document which he said was an assignment of the patent by the corporation to Juul, Sr. At the time, Juul, Jr., was about 14 years of age. The document was not produced and no such document was ever recorded.

On November 3, 1947, after the patent had expired on July 15, 1947, the corporation undertook to reassign the patent to Juul, Jr. In the preliminary part of the assignment it was recited that "all the stockholders of the corporation are satisfied and convinced that such patent is not the property of the corporation, but in truth and in fact was owned by Edward Arthur Juul since 1935 and up to the time of his death on December 28, 1946, and is presently an asset of his estate".

This is not satisfactory evidence of reassignment, but in view of our later findings it is not necessary to determine this question.

The patent relates to building construction and particularly to removable and reusable forms for pouring concrete walls.

In constructing a wall in accordance with the patent, a series of permanent vertical wall columns the thickness of the proposed wall would be erected. A series of flat metal forms would then be placed horizontally between the beams, one resting above the other, one set on the outside and one on the inside of the proposed thickness of the walls, thus forming a wall cavity. These flat retaining metal plates would be retained against the beams by removable upright supports such as T-bars bolted to the beams. Concrete would be poured between the two sets of flat retaining forms. After the concrete was set the removable upright supports would be unbolted and the flat metal forms removed, thus leaving the concrete wall reinforced by the spaced steel beams. The metal forms, removable upright supports and bolts could then be used for further wall operations. The forms are described and illustrated in finding 6.

Plaintiff asserts that the defendant infringed claim 3 of the patent in suit in the construction of deckhouses, radio and chart rooms on vessels constructed for the United States Maritime Commission.

This work as done by contractors for the Maritime Commission consisted of a three-inch layer of bituminous concrete made of a mixture of asphalt material with a suitable filler such as crushed stone or gravel. This mixture was poured between structures of relatively thin steel plates, the inner one of which was permanent and formed the wall of the deckhouse. The purpose of the bituminous concrete was to prevent the ready penetration of shell fragments and small caliber projectiles, thus acting as a protective armor.

A description of the forms used by the Government is set out in finding 10. Vertical steel T-bars or columns were welded to the steel plate forming the wall of the deckhouse and the steel forms were placed against the outer faces of the columns, forming a cavity to receive the pouring of the bituminous mixture. These flat plates were retained against the vertical columns by means of removable upright supports bolted thereto. In the main, these outer forms consisted of a single sheet extending the full height of the deckhouse, but in some instances more than one plate was used. After the filler material had cooled and hardened the upright supports were unbolted and the forms removed.

A number of instances of the prior art cited by the Patent Office are set out in findings 13 and 14.

A detailed description of the Cummings patent which preceded that of plaintiff is set out in finding 15. It contemplated the use of multiple frame mold boards one placed upon the top of the other on opposite sides of a proposed wall and forming a container for the pouring of a concrete wall. The front and back board forms were removable.

Another prior patent was issued to Peabody on May 8, 1928. It is described in finding 16. It provided for removable forms on the front and back sides of columns and plastic concrete was poured into the cavity formed by the columns and forms. When the concrete had hardened, the forms could be removed and used again.

Another previous patent, known as the Bagby patent, is described in finding 17

Another patent known at the Smith patent was issued June 10, 1922. It also related to a method of constructing concrete walls. It is described in detail in finding 18. It called for a plurality of permanent wall columns in spaced relationship to each other in the line of the proposed wall. A plurality of form boards was placed horizontally one above the other on opposite sides of the wall column. These were retained in place against the columns by means of pairs of vertical form-supporting members. After plastic concrete was poured into the cavity thus formed, the vertical upright supports could be loosened and the forms with their supporting members and clamps could be reused on another portion of the wall.

A comparison of the elements in claim 3 of the Juul patent and the corresponding elements in the Smith patent is set out in finding 20, and indicates similarity of structure, element by element, between claim 3 and the prior art patent.

It also appears from a comparison that the exact structure used by the Government in its plastic armor construction was taught by the Cummings patent with the exception

**134**

that the Government reinforced the forms by upright supporting members located against the outer surface of the forms. The use of such vertical supports was taught by the Peabody and Bagby patents described in findings 16 and 17, and was thus available to those skilled in the art prior to the time of plaintiff's patent. Plainly, therefore, all the material features of the structure used by the Government were present in the prior art. Claim 3 here in issue is invalid and not infringed.

Even if it were clear that the title to the patent in suit were vested in plaintiff, there would still be no basis of recovery.

Plaintiff's petition is dismissed.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.